## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| XCOAL ENERGY & RESOURCES and XCOAL ENERGY & RESOURCES-JAPAN GK, | ) ) ) | No. 2:22-cv-968 |
| | ) | |
| Plaintiff, | ) | Judge Robert J. Colville |
| | ) | |
| v. | ) | |
| | ) | |
| MITSURU ASANOME, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 16) filed by Defendant moves to dismiss all counts in Plaintiff's Complaint (ECF No. 1), arguing that this Court lacks subject matter jurisdiction and personal jurisdiction to adjudicate this matter and that Plaintiffs have failed to state a claim upon which relief can be granted. Defendant also asked the Court to not exercise supplementary jurisdiction over the state law claims Plaintiffs bring, even if the Court is inclined to not dismiss the case. The Court has subject matter jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1331. The Motion has been fully briefed and is ripe for disposition.

### I.    Factual Background & Procedural History

In the Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

From sometime in 2012 until March 2022, Defendant served as Marketing Manager for Plaintiff Xcoal-Japan, GK,[1] an affiliate of Plaintiff Xcoal-USA.  ECF No. 1 ¶ 3.  In his role as Marketing Manager, Defendant was entrusted with proprietary information, commercially sensitive confidential information, and trade secrets.  *Id.* at 4.  Plaintiffs spent considerable time and money to develop and keep this information confidential.  *Id.* at 80–81.  These trade secrets were stored on a company server located in Latrobe, Pennsylvania, and accessible by Defendant from a laptop provided by Plaintiff Xcoal-USA, which is incorporated and headquartered in Pennsylvania.  *Id.* at 55.

After his resignation, Defendant returned his company-issued laptop with all data permanently deleted.  *Id.* at 57.  Plaintiffs later learned that Defendant had taken a position with one of Plaintiff's competitors, Oluma Resources, LLC (which has its principal place of business in Pittsburgh, PA), providing the same marketing services for Oluma, one of Plaintiffs' direct competitors in multiple markets.  *Id.* at 14.

Plaintiffs alleges that prior to his departure from employment with Plaintiffs, Defendant extracted confidential information via his company-issued laptop from Plaintiffs' servers and shared it with his new employer.  *Id.* at 58.  Further, Defendant knew this information to be confidential and, if known to a competitor, harmful to Plaintiffs.  *Id.* at 86.

Plaintiffs bring this action for violations of the federal Defend Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("UTSA"), and Common Law claims for Breach of Contract, Conversion, Tortious Interference with Contractual Relationships, Breach of Duty of Loyalty, and Unfair Competition.  On November 3, 2022, Defendant filed a Motion to Dismiss,

---

[1] A GK, or gōdō kaisha (合同会社), is a "type of membership company where the liability of the company members in the GK is limited to their capital contributions," and is generally considered to be the Japanese equivalent of a U.S. limited liability company.  *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 1734049 (E.D. Tex. Apr. 17, 2017).

along with a Brief in Support (ECF No. 18).  On November 25, 2022, Plaintiff filed a Response, along with a Brief in Support (ECF No. 20).

## II.     Legal Standard

Defendant moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and, as to the state claims, for a compelling reason to decline to exercise supplemental jurisdiction.

### A.  Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B. Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter exists. *Brown v. Tucci*, C.A. No. 12-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Fin. Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The United States Court of Appeals for the Third Circuit has explained:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000)) (internal quotation marks omitted). Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. *Mortensen*, 549 F.2d at 891. In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. *Id*. With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that

evidence. *Petruska*, 462 F.3d at 302 n.3; *see also Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortenson*, 549 F.2d at 891). Such inquiry is permissible because a federal court must assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in doing so. *See Boyle v. The Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (3d Cir. 1991) (citing *Mortensen*, 549 F.2d at 891).

### C. Personal Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) tests the Court's power over the defendant. "[I]n reviewing a motion to dismiss under Rule 12(b)(2), the court 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992)). Once a defendant has properly raised a jurisdictional defense, however, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990) (per curiam). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker*, 292 F.3d at 368).

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *N. Penn Gas Co.*, 897 F.2d at 689. In

exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489–90 (3d Cir. 1985). This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *N. Penn Gas*, 897 F.2d at 690. The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor*

*v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).  To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.*  However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc.,* 384 F.3d at 99-100).  The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests," that is, whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state.  *Id.* at 323.

In intentional tort cases, the United States Supreme Court has developed a three-pronged "effects" test.  *Calder v. Jones*, 465 U.S. 783 (1984).  Under the *Calder* test, the following elements must be satisfied: (1) the defendant committed an "intentional tort," (2) the plaintiff "felt the brunt of the harm" in the forum, such that the forum can be said to be the focal point of the harm suffered, and (3) the defendant "expressly aimed" the allegedly tortious conduct at the forum.  *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998); *Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001).

## III.    Discussion

Defendant moves to dismiss on three separate jurisdictional theories: (1) the Court lacks subject matter jurisdiction over the one federal law claim, the DTSA violation, which, Defendants assert, Plaintiffs included in the Complaint merely to shoehorn subject matter jurisdiction over this controversy, (2) the Court lacks personal jurisdiction over Defendant, a Japanese citizen who worked for Plaintiff's Japanese affiliate in Japan, and (3) Plaintiff has failed to state a claim for a DTSA violation, and thus the Court lacks supplemental jurisdiction over the remaining state law

claims.  Defendant also moves to dismiss all state law claims, even if the federal claims move forward, because a compelling reason exists not to exercise supplemental jurisdiction.

### A. Stating a Claim for the DTSA Violation

Defendant argues that Plaintiffs fail to state a claim upon which relief can be granted, because Plaintiff has not alleged that Defendant committed an act in furtherance of the alleged offense in the United States.

To state a claim under the DTSA, a plaintiff must allege that he "(1) owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs, Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (cleaned up).

Under the DTSA, a trade secret is "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if, (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).  Plaintiffs claim that they spent time and money developing the allegedly misappropriated information and that they keep it confidential.  ECF No. 1 ¶¶ 80–81.  This is a trade secret as defined by the DTSA.

The DTSA defines misappropriation as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

or (B) disclosure or use of a trade secret of another without express or implied consent by a person who, (1) used improper means to acquire knowledge of the trade secret; (2) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was, (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (3) before a material change of the position of the person, knew or had reason to know that, (I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake." 18 U.S.C. § 1839(5). Plaintiffs allege that despite knowing that some of the information Defendant had or was privy to, Defendant disclosed one or more trade secrets without Plaintiff's consent. ECF No. 1 ¶¶ 85–86. This, as alleged and if proven, is a misappropriation as defined by the DTSA.

A trade secret misappropriation claim can be brought under the DTSA "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A plaintiff can bring a claim under the DTSA for conduct that occurred outside the United States if "the offender is a natural person who is a citizen or permanent resident alien of the United States" or "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(1)–(2).

Defendant's primary argument is related to § 1837, because Defendant (1) is neither a citizen nor permanent resident of the United States, (2) did not commit any act in furtherance of the alleged offense in the United States, and (3) was not in the United States during the alleged offense or for two full years prior to the alleged offense. ECF No. 16 at 15. Defendant cites a case

from the Middle District of Florida, in which the court found that an employee of an American company's German subsidiary who had done all his work in Germany could not be held liable under DTSA, because he failed to meet the requirement of acting in furtherance of the offense within the United States. *ProV Int'l Inc. v. Lucca*, 2019 WL 5578880 (M.D. Fla. Oct. 29, 2019).

Plaintiffs argue that Defendant need not have been physically within the borders of the United States to meet the requirements of § 1837. Defendant received confidential information from Plaintiff Xcoal-USA, a United States company, and retained and misappropriated that information on and from a company laptop, issued to Defendant by Plaintiff Xcoal-USA, which included information stored on United States-based servers or sent from United States persons. Plaintiffs point to the plain wording of the statute, which specifically provides that a defendant can be liable for "conduct *occurring outside the United States*," as long as some act in furtherance of the offense occurred in the United States. 18 U.S.C. § 1837 (emphasis added). This, Plaintiffs argue, suggests that the misappropriation itself need not occur within the borders of the United States, as long as something to assist the misappropriation did. Plaintiffs also cite to a case from the Southern District of California, where the court found that although the phrase "an act in furtherance of the offense" lacks any clear definition in the statute, courts should look to how the phrase is typically interpreted in the conspiracy case law. *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *15 (S.D. Cal. Aug. 27, 2020). Citing a case from the Western District of Washington, Plaintiffs argue that it would be untenable within the context of modern commerce to think of actions taken from a foreign country over the internet as automatically non-U.S.-based. *vPersonalize Inc. v. Magnetize Consultants Ltd.*, 437 F. Supp. 3d 860, 879 (W.D. Wash. 2020).

The Court agrees.  Applying the "committed in the United States" standard described by Defendant would essentially foreclose most people injured over the internet from seeking redress in the forum in which they were harmed.  It would not make much sense for United States companies that do business abroad to be barred from remedies against foreign bad actors in American courts because these foreign actors failed to physically step foot in the United States to carry out their bad acts.  Certainly, there must be at least something tying the alleged wrongdoing to the United States, but the bar there is relatively low.  As long as the defendant received some of the trade secrets from the United States, subsequent misappropriation, even if it occurs abroad, would fall under the scope of the DTSA.  *See, e.g.*, *Medcenter Holdings Inc. v. WebMD Health Corp.*, 2021 WL 1178129 (S.D.N.Y. Mar. 29, 2021); *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906, at *5 (C.D. Cal. June 3, 2019); *see also Dmarcian, Inc. v. Dmarcian Eur. BV*, 2021 WL 2144915 (W.D.N.C. May 26, 2021), amended in part, 2021 WL 3561182 (W.D.N.C. Aug. 11, 2021), and aff'd, 60 F.4th 119 (4th Cir. 2023).  As the court put it in *IQVIA*, "Defendants (sic) reliance on *ProV Int'l, Inc. v Lucca* is inapposite as there, the court found there were no facts alleged connecting the defendant's [nexus to the United States] with the alleged misappropriation of the plaintiffs' trade secrets."  *MedImpact Healthcare Sys., Inc.*, 2020 WL 5064253.  That is not so in the instant case.  Here, Plaintiffs allege that the trade secret misappropriation occurred directly through contact with or disclosure from United States-based sources.  The Complaint describes how Defendant came into possession or control of proprietary information from the United States, and his misappropriation of precisely that proprietary information.  ECF No. 1 ¶¶ 54–60.  The alleged misappropriation is directly related to Defendant's contact with the United States.

Plaintiffs' Complaint properly states a claim under the DTSA.  As such, Defendant's Motion to Dismiss for failure to state a claim under Rule 12(b)(6) is denied.

### B.  Subject Matter Jurisdiction for DTSA Violation

Defendant moves to dismiss this case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that because Plaintiffs have failed to state a claim under the DTSA, the remaining claims should be dismissed for lacking a federal question to which they are ancillary.

Because the Court has found that Plaintiffs have properly stated a claim under the DTSA, there is a federal question before this Court.  As such, Defendant's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is denied.

### C.  Personal Jurisdiction Over Defendant, Asanome

Under Federal Rule of Civil Procedure 12(b)(2), the onus rests on the plaintiff to establish personal jurisdiction.  *See Pinker*, 292 F.3d at 368.  If challenged, "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'"  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).

Defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), arguing that Defendant has had neither "systematic and continuous" contact with the forum to establish general jurisdiction, nor "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice" to establish specific jurisdiction.  *Int'l Shoe Co.*, 326 U.S. at 316 (quotations omitted).  Defendant is not a citizen or resident of, employed in, or even a recently frequent visitor to, the United States, let alone the forum state.

Defendant argues further that Plaintiffs also fail to establish personal jurisdiction under the *Calder* effects test, because Defendant's alleged actions do not meet the "expressly aimed" prong of the test. Any of Defendant's actions directed at the forum are not related to Plaintiffs' claims. Defendant cites to a case from the Eastern District of Pennsylvania, in which the defendant, a Texas-based sales representative for a Pennsylvania company, allegedly misappropriated his employer's customer list and provided it to a competitor in Texas. The court there found that the plaintiff had failed to allege facts to establish specific jurisdiction in Pennsylvania, because the defendant did not direct any of his activities at that forum. As the court put it, the claims did not arise out of or relate to the plaintiff's contacts with Pennsylvania. *TorcUP, Inc. v. Aztec Bolting Servs.*, Inc., 386 F. Supp. 3d 520, 527 (E.D. Pa. 2019).

Plaintiffs argue that personal jurisdiction is satisfied under both the traditional minimum contact test and the *Calder* effects test. First, Defendant purposefully directed his activity at the forum. He was fully integrated into Plaintiffs' Pennsylvania-based office, including ongoing contact with the Pennsylvania offices for logistical, shipping, forecast, and analysis purposes. Further, Defendant was paid by, worked out of offices paid for and facilitated by, used a work computer provided by, had an email address generated by, and accessed all files on a server hosted by Plaintiff Xcoal-USA. Defendant also regularly worked in Pennsylvania alongside his U.S.-based colleagues, including on-site visits, a routine that only paused due to the Covid-19 pandemic. Most importantly, Defendant's job was to work on behalf of a Pennsylvania company to market its products to the Japanese market, and the alleged wrongdoing was providing confidential company information to a Pennsylvania-based competitor.

14

Second, Plaintiffs argue that because all the claims are premised upon this relationship and activities, the second prong of the traditional test, that the claims arise out of or relate to the defendant's activities, is met, as well.  *O'Connor*, 496 F.3d at 312.

Third, Plaintiffs argue that given that the first two prongs of the traditional test are met, the onus is on Defendant to show why an exercise of jurisdiction would offend fair play and traditional justice.  Because Defendant has failed to meet this burden, the third prong is satisfied, as well.

As to the *Calder* test, Plaintiffs argue that (1) misappropriation is an intentional tort, (2) Plaintiffs clearly felt the brunt of the harm where it is located, that is, Pennsylvania, and (3) Defendant knew that Plaintiffs' trade secrets were located, protected, and of principal use in this forum, and therefore, by misappropriating them, he expressly aimed his allegedly tortious conduct at the forum.

The Court agrees that personal jurisdiction is satisfied.  To establish the purposeful availment prong of the traditional test, a defendant need not physically step foot in the forum.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  As the Third Circuit Court has held, "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."  *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993).[2]  Minimal contact can support jurisdiction, as "long as it creates a 'substantial connection' with the forum."  *See Burger King*, 471 U.S. at 475 n.18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  A "substantial connection" is just enough to allow a defendant to reasonably foresee being haled into court in the forum state.  *See World-Wide Volkswagen Corp.*, 444 U.S. at 297.

---

[2] And as the Court noted earlier, *supra* Part III(A), in the internet age, this logic would have to extend to communications or exchanges that take place on the world wide web.

The facts as alleged, and attested to through a Declaration (ECF No. 20-2), show that Defendant purposefully directed his activities at the forum, establishing minimum contact. He is alleged to have taken Plaintiffs' proprietary trade secrets located in Pennsylvania and provided them to a Pennsylvania competitor. While *TorcUp*, the case Defendant cites principally to oppose the theory that his activities were directed at the forum, is not binding on this Court, it is notably different in that the company to which the defendant provided misappropriated information was the plaintiff's competitor in a different forum. While there, the Texas defendant provided his Pennsylvania employer's Texas customer list to a Texas competitor, here, Plaintiffs allege that Defendant misappropriated its trade secrets to a competing company in this very forum, giving them information on Plaintiffs' operations. 386 F. Supp. 3d 520 (E.D. Pa. 2019).

The Court also concludes that exercising jurisdiction would not offend traditional notions of fair play and substantial justice. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (citing *Burger King*, 471 U.S. at 477). Thus, where there is minimum contact, the Court presumes that personal jurisdiction over a defendant is proper. In the instant case, the Court has found that minimum contacts have been established, and Defendant has provided no compelling argument questioning fair play and substantial justice. Accordingly, this Court's exercise of jurisdiction over Defendant comports with the traditional personal jurisdiction test.

The Court further concludes that the Complaint satisfies the *Calder* effects test for personal jurisdiction. *Calder* itself involved a plaintiff, Oscar-winning actress Shirley Jones, who brought suit against defendants who had never been inside the forum to conduct their tortious activities (in that case, libel). *Calder*, 465 U.S. 783. However, to gather information about the plaintiff, the

defendants made contact with individuals in the forum (in that case, California).  Because the information that was the subject of the tortious conduct was derived from the forum, the tortious conduct was eventually aimed at the forum, and the plaintiff was a resident of the forum and therefore ultimately felt the brunt of the harm in the forum, the Supreme Court ruled that such contact with the forum was sufficient to exercise personal jurisdiction over the defendants.

Misappropriation claims sound in intentional tort.  *See, e.g.*, *GEICO v. Nealey*, 262 F. Supp. 3d 154, 163–66 (E.D. Pa. 2017).  Here, Plaintiffs claim that its trade secrets were misappropriated by Defendant.  As such, the *Calder* test is appropriate, and the first prong of the test is satisfied. In misappropriation cases, the brunt of the harm is felt "in the states where the trade-secret owner is incorporated or headquartered."  *Id.* at 166; *see also, e.g.*, *Eddie Kane Steel Prods., Inc. v. Ala. Plate Cutting Co.*, 2019 WL 3281623, at *5–6 (D.N.J. July 19, 2019).  Here, Plaintiff Xcoal-USA is incorporated and headquartered in Pennsylvania.  Thus, the second prong of the *Calder* test is satisfied.

Finally, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum."  *IMO Indus.*, 155 F.3d at 266.  This can be done by "point[ing] to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum," such as when "the defendant . . . manifest[s] behavior intentionally targeted at and focused on" the forum.  *Id.* at 265–266 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)) (internal quotation marks omitted).  Thus, first the Court looks for indicia that support an inference that Defendant knew its activities were designed to hurt Plaintiffs, and then the Court looks at whether the forum was the focal point of Defendant's activities.

In *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, for instance, the court found that when the defendant removed the company logo from trade secret corporate documents, while this may have been an innocent choice, the court could reasonably infer that he did so knowingly to hide the alleged misconduct.   2020 WL 1526940 (W.D. Pa. Mar. 31, 2020).   In the instant case, Plaintiffs allege similar facts about Defendant, claiming that when he returned his company-issued computer, he had conducted a hard reset to its factory settings, actions that the Court may infer were designed to hide evidence of his alleged misappropriation.   "That attempt at concealment demonstrates intentionality."  *Id.* at *12.   Thus, here there is indicia that there was express aiming and intentional targeting.

"[T]he focal point of where [the] defendant directed its activities is where [the] plaintiff's trade secrets are located and from where they were presumably stolen."  *Cabot Corp. v. Niotan, Inc.*, 2011 WL 4625269, at *14–16 (E.D. Pa. Sept. 30, 2011); *see also id.* ("The physical act of theft is certainly aimed at the place of the theft, but the reasonable expectation and understandings in the mind of the thief is that he takes something that belongs to someone else and that the effect of his theft will be where that someone is located." (quoting *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F. Supp. 816, 823 (S.D. Iowa 1997))); *see also Eddie Kane*, 2019 WL 3281623, at *6 ("[I]f a defendant steals trade secrets from a plaintiff, the defendant expressly aims his or her tortious activity at the state where the plaintiff resides, and the plaintiff has felt the brunt of the harm in that state.").   In the instant case, Plaintiffs' trade secrets were located and, if proven, stolen from Plaintiff Xcoal-USA's place of business, which is in Pennsylvania.  Thus, the Court concludes that this forum was the focal point of Defendant's activities.

Accordingly, the Court finds that Defendant is subject to personal jurisdiction in Pennsylvania. As such, Defendant's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) is denied.

### D. Supplemental Jurisdiction Over the State Claims

Defendant moves to dismiss the state law claims, arguing that even if the Court exercises jurisdiction over the federal claims, and over Defendant, and finds that Plaintiffs properly stated a claim, the Court should nevertheless decline to exercise supplemental jurisdiction over the state law claims because a compelling reason exists to do so.

Defendant argues that it is proper for a court to decline to exercise supplemental jurisdiction where there is a compelling reason to do so. (Defendant cites to *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178 (M.D. Pa. 2008), *Casco v. Ponzios RD, Inc.*, 2018 WL 1203469 (D.N.J. Mar. 8, 2018), *on reconsideration*, 2018 WL 2002787 (D.N.J. Apr. 30, 2018), and *Bangura v. City of Philadelphia*, 2007 WL 3376676 (E.D. Pa. Oct. 15, 2007).) Defendant contends that because Japanese law would govern any non-federal claims, factors of practicality weigh in favor of declining to exercise supplemental jurisdiction.

First, "when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (citations omitted). "The Supreme Court has directed that 'a plaintiff's choice of forum should rarely be disturbed.'" *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294 (3d Cir. 2010) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). Further, "the application of [*forum non conveniens*] should be 'rare.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722

(1996). Thus, the Court's analysis weighs heavily in favor of exercising supplemental jurisdiction over the state law claims brought by Plaintiffs.

Second, the Court is not convinced that Japanese law would necessarily govern. To support the contention respecting choice-of-law, Defendant claims that (1) Defendant is a Japanese citizen who worked in Japan, (2) the breach of contract claim in particular is over an agreement between two Japanese parties, (3) the choice-of-law analysis in Pennsylvania applies the substantive law of the place where the action arose. ECF No. 18 at 19–20 (citing *Bachmann v. Blaw-Knox Co.*, 198 F. Supp. 617 (W.D. Pa. 1961)).

As noted earlier, the Court is not moved by arguments that, under the circumstances of the allegations in this case, a Japanese citizen living in Japan should be able to evade legal liability to an American person or entity. Numerous analyses above, *supra* Part III(A) and Part III(C), address why Pennsylvania has a superior interest in applying its laws over this controversy than does Japan. As a choice-of-law matter, the Court does not see any compelling reason to trade inconvenience to Defendant for inconvenience to Plaintiffs. The allegedly misappropriated data was moved from Pennsylvania to Pennsylvania, and so the primary evidence, witnesses, and parties involved are presumably located in this forum.

The breach of contract claim does not present an issue either. First, the contract does not contain a choice-of-law provision. And second, the agreement was signed by Defendant and an American company located in Pennsylvania. ECF No. 1-2. Once again, Pennsylvania law likely would rightfully govern.

And finally, as noted several times in this Memorandum, the alleged actions that give rise to the causes of action in this case arose in the state of Pennsylvania. That Defendant was physically present in Japan while allegedly accessing American data from an American company

and sharing it with another American company does not allow him to demand that Plaintiffs sue him within, or pursuant to the law of, his preferred forum.

Accordingly, the Court finds that supplemental jurisdiction over the state law claims is proper. As such, Defendant's Motion to Dismiss the state law claims is denied. Nevertheless, because the Supreme Court instructs courts to weigh convenience, fairness, comity, and judicial economy "at every stage of the litigation," the Court is open to revisiting this matter at a later date and with more robust briefing, if warranted. *Int'l College of Surgeons*, 522 U.S. at 173.

### IV.    Conclusion

For the reasons discussed above, the Court will deny Defendant's Motion to Dismiss. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 28, 2025

cc: All counsel of record,

21